PETITION OF ACHILLE G. VERVENA, Conservator *et al.* for an Opinion.

NOVEMBER 24, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

STEARNS, C. J. This is a proceeding brought under Section 20 of Chapter 339, G. L. 1923, which provides that parties having adversary interests in any question of the construction of any statute of this State, or as to any matter or thing within the jurisdiction of a court of equity, may concur in stating such question in the form of a special case for the opinion of the Supreme Court.

Achille G. Vervena, conservator of Columbus Exchange Trust Company, a banking institution incorporated under the laws of this State, the Columbus Exchange Trust Company, Caesar T. Cambio, a stockholder in said trust company, the bank commissioner and the Governor of this State, have concurred in a statement of the facts and in stating certain questions for the opinion of this court.

In March, 1933, the banking institutions in this State were closed to business because of an economic crisis which was nationwide. The Columbus Exchange Trust Company, (hereinafter referred to as the Trust Co.) in pursuance of a vote of its board of directors, petitioned the State bank commissioner for the appointment of a conservator of its property, assets and affairs in accordance with the provisions of Chapter 2019, P. L. 1933. March 23, the bank commissioner, with the approval of the Governor, appointed Achille G. Vervena conservator of the Trust Co.

To arrange and provide for a reorganization of the Trust Co. and to procure a loan for such purpose said conservator entered into negotiations with the Reconstruction Finance Corporation of the United States, (hereinafter referred to as the R. F. C.) an agency of the federal government created, among other things, for the purpose of assisting in the reopening or reorganization of banks throughout the country and for making loans to banks at a low rate of interest upon pledges to said R. F. C. of sound but "slow" or "frozen" assets of such banks, the

money so loaned to be applied to the payment of the depositors and creditors of the banks.

As a result of these negotiations a plan for the reorganization of the Trust Co. and the partial payment of its depositors and creditors has been evolved. One important part of this plan is the loaning of $600,000 by the R. F. C. to the conservator upon the pledge by the latter, as security for the repayment of the loan, of certain specified assets of the Trust Co. segregated in its savings or participation department, which assets, believed to be sound, are "slow" or "frozen"; the money secured by such pledge and loan is to be applied to the payment of the debts of the Trust Co. to its savings depositors. This plan has been approved by the R. F. C., the Governor of this State, the bank commissioner and by the Trust Co. and its board of directors.

The conservator, by an order of the bank commissioner duly approved by the Governor, was authorized and empowered to obtain a loan from the R. F. C. for the benefit of the Trust Co. in the amount of $700,000 or such less amount as could be secured; to give promissory notes therefor and, as security for the payment of such loan, to assign and transfer to the R. F. C. any of the assets of the Trust Co. segregated in its savings or participation department, including but not limited to the assets particularly described in said order, and to execute all instruments and to do all acts necessary to give to the R. F. C. a first lien on the assets so pledged.

On October 16, 1933, at a meeting of the board of directors of the Trust Co., a vote was passed which in substance is as follows: After a recital of the facts as above stated and a statement that the Trust Co. and its directors are fully cognizant of the terms and provisions of the order made by the bank commissioner and the pledge of assets authorized thereby, the corporation and the board of directors state that, "being convinced that the granting of said loan and the pledging of said assets will be for the best interest of this

Trust Co., its depositors and other creditors and the stockholders thereof", they join with the conservator in requesting the R. F. C. to make the loan so authorized by the order. It was also voted that the Trust Co. join with the bank commissioner, the conservator and any other persons who may be interested in a petition to the Supreme Court to answer certain questions relative to the authority of the bank commissioner and conservator to secure a loan from the R. F. C. and to pledge the assets of the Trust Co. as security therefor; also that the attorney for the Trust Co. appear before the Supreme Court and support the contention that the proposed loan and pledge are authorized and proper.

At the hearing before this court the attorney general, representing the bank commissioner, and the attorneys for the Trust Co. and the stockholder, all agreed that the proposed loan and pledge were authorized and were for the benefit of the Trust Co., its creditors and stockholders and necessary for the rehabilitation of the Trust Co. The questions submitted to us are as follows:

1. Is the power and authority to borrow money in behalf of a corporation, which by Title XXV of the General Laws of Rhode Island is subject to the supervision and oversight of the bank commissioner, and to make and deliver notes and renewal notes therefor in behalf of said corporation, and to transfer assets of said corporation by way of pledge as security for the repayment of money so borrowed, and to make and deliver all such other instruments as may properly be required to evidence and effectuate such borrowing, transfer and pledge, among the powers and authorities which, under the proper construction of said chapter 2019 of the Public Laws of Rhode Island of 1933, said bank commissioner, by orders made by him and approved by the Governor of said state and filed and recorded all in accordance with said chapter 2019, may confer upon a conservator of said corporation duly appointed, qualified and acting in accordance with said chapter 2019?

2. If the court answers the foregoing question in the affirmative, does the aforesaid order heretofore made by the bank commissioner, with the written approval of the Governor, confer upon said conservator valid authority and power to procure from said R. F. C. a loan in the amount of six hundred thousand dollars, the entire proceeds of such loan to be used for the payment of a dividend to the savings or participation depositors of said Trust Co., and to pledge, as security for the repayment of the money so borrowed, those of the securities described in said order which are required by said corporation, and to execute and deliver notes and other instruments as set forth in said order?

We answer each question in the affirmative. Chapter 2019 was approved and became a law March 22, 1933. At that time, as is well known, banking institutions faced a crisis which to a large extent was the result of a long business depression. The need for immediate action to adequately protect the banks and the citizens of this State from great and unnecessary loss was plain. To meet this exigency Chapter 2019, entitled "An act to authorize the bank commissioner, with the approval of the governor, to appoint conservators for banks, trust companies and other institutions subject to the supervision and oversight of the bank commissioner," was enacted. This act provides that any action thereunder by the bank commissioner shall be taken only with the written approval of the governor; that, whenever any banking or other corporation created under the laws of this State which is subject by Title XXV of the General Laws to the supervision of the bank commissioner shall petition to said commissioner for the appointment of a conservator of its property and affairs for the benefit of its depositors and other creditors and in order to provide opportunity for a reorganization of its affairs, said commissioner is authorized to appoint a conservator thereof, if the petition in each case is made in pursuance of a vote therefor by either a majority of the stockholders or a majority of the board of directors.

The conservator is empowered and directed to take possession of and to manage the property and business of the petitioning corporation, to take such action in the name and behalf of such institution as may be necessary or desirable to carry on its business and to conserve its assets pending reorganization or the disposition of its assets as provided by law, all under the direction and control of the bank commissioner. While such conservator remains in charge of the affairs of the banking institution, the rights of creditors to bring suits against such institution or its conservator are the same as if the conservator were a receiver appointed by the court.

Section 3 provides that each conservator under the direction of the bank commissioner shall collect all moneys due to such institution and do all acts necessary to continue its business and to conserve its assets; that he may sell or compound bad or doubtful claims and demands due to such institution and may sell all or any part of the real and personal property and other assets of such institution and execute, acknowledge and deliver deeds, assignments, releases and other instruments which he may consider. necessary, proper and desirable to effectuate any sale of real or personal property and any compromise and any other transaction which may be performed or entered into by him under the powers and authority which may be conferred upon him as provided in the act. It is further provided that deeds and instruments so executed shall be valid and effectual for all purposes to the same extent as if executed by such institution by authority of its board of directors or its stockholders.

Section 7 provides that the bank commissioner may terminate the conservatorship at any time and permit the institution to resume business upon such conditions as he may prescribe. Section 8 provides that the appointment of a conservator shall not affect the power of the court to appoint a receiver at any time upon petition of the commissioner.

The end sought by the statute is the conservation not the liquidation of banking institutions. The appointment of a conservator is in the discretion of the bank examiner and is made only upon the petition of the banking institution. It is a voluntary procedure for the benefit of such institutions and their depositors. The conservator is expressly authorized to do all acts necessary to continue the business and conserve the assets and to sell all or any part of the property and assets. The pledge of assets is common and often necessary in the conduct of business. The conservator is authorized to take mortgages on real estate in the name of the institution to secure the payment of the purchase price of any property sold by him. That the legislature intended to authorize the conservator to receive pledges as security for sales of the assets and to deny to him authority to pledge the assets as security for a loan for the benefit of the institution and its depositors is unlikely. The power to pledge is less than the power to sell.

In view of the purpose and the provisions of the statute we are of the opinion that the conservator has authority to pledge assets and that in the case submitted to us the conservator is authorized to make the proposed pledge and the parties are advised accordingly.

*Greenough, Lyman & Cross, Richard E. Lyman,* for Conservator.

*William W. Moss, Asst. Attorney General,* for Bank Commissioner.

*Luigi De Pasquale,* for Caesar T. Cambio.